This call for argument is Henry Guardianship of A.G.G. This call for argument is Henry Guardianship of A.G.G. Good morning. May it please the Court. I want to give you a brief outline of the facts because I'm sure you've already read them in the various briefs. My client is Victor Eck, who is a 50-year-old electrical contractor, self-employed. He became involved with Jennifer Greer, who is the mother of the child in this case, while she was going to a custody battle with her first child, Carly. My client felt very sorry for Jennifer in the conditions in which he found her. He rescued her as he would so many times during the course of their relationship together. At the time, she was living a rather wretched existence in a home with no running water, no heat, animal feces on the floor, and trash in the house. This was the same home in Marion, Illinois, from which her pending felony charges, which arise from animal cruelty. When Jennifer became pregnant with Alex, who was born on March 6th of 2007, Victor was led to believe that he indeed was the father. However, he had sufficient experience with Jennifer based on his relationship with her by this time to recognize that she wasn't particularly truthful, and so he took the opportunity shortly after the child was born to have a paternity test and discovered that in fact he was not the dad, and so he rescinded the voluntary acknowledgment of paternity that he had previously signed. However, he continued to live with Alex and Jennifer except for the 16 times that she moved since Alex's birth and as of the trial date. Jennifer Greer has a mental health history. She has threatened to kill herself in front of the child on one occasion, and she had made a rather recent threat to her mother on the telephone when she said, What would happen to Alex if I blew my brains out? She had also made threats of suicide to her father, but these were mostly in the context of trying to get him to pay money for her support. Nonetheless, she admitted she was going to counseling, and as she put it, she wanted to stay at the women's shelter, which was her home at the time of this hearing. She was going to stay there until such time as she could get stable. She's 38 years of age. She has absolutely no employment history for the last five years other than occasional Internet sales, hand-woven tacks such as bridles that one makes to lead horses and put on horses, and some handmade knitted goods. Without Victor's financial assistance, she was completely unable to support herself and the child, and every time that she moved out on her own, she would end up exactly like Victor found her initially, unable to survive, unable to take care of Alex, no means to pay rent, food, utilities, or provide transportation. There was a period of three weeks that she went to jail, and during that time, Victor cared for Alex until he bailed her out. There was also the problem that whenever Jennifer moved from a place, she would often leave her things and Alex's things behind, and other people were forced to supply her with food and furniture and even toys for the child. She's banned from visiting her first child, Carly, whose custody she lost because she was found to have seriously endangered that child's environment. She has a large child support judgment against her, and she has never paid. She's been evicted from some of the places where she lives, and she has stolen money and bounced at least one check. As I pointed out at the time of the hearing, she was a woman's shelter resident. She got there when she threatened to kill herself and to leave Alex at the police station. During the hearing, Victor employed the sheriff for help in finding Alex and discovered that, in fact, she was at the women's center. While my client produced about ten witnesses, Jennifer produced only two. They were from the women's shelter. There were no family, no friends who testified on her behalf, and while she was at the shelter, her witnesses conceded that she was provided with food and all the necessities of living, and under their care, of course, she was capable of taking care of Alex. Victor, who was wrongfully accused of domestic violence, was supported by his ex-wife, his daughter, and even his ex-girlfriend, all of whom came to court and testified that this man had never physically, mentally, or any way, shape, or form abused any child or any woman. This is the same Jennifer, I think you should remember, that accused the first child's father of domestic violence but then told Eugenia Hunter, who was the guardian ad litem in this case, that, in fact, he really wasn't violent. They were merely arguing. My argument really only raises two points. The first is whether or not the trial court erred when it failed to grant an evidentiary hearing on the issue of standing. The court, obviously the mother was the one that filed the motion. The judge asked, the mother made a good argument, cited to the case of RLS, explained to the judge that an evidentiary hearing was required. Then the judge turned to Eugenia Hunter, asked her opinion. She also said that the petitioner was entitled to an evidentiary hearing on standing, and the judge asked whether I agreed with that, and I said that I did. Nonetheless, the judge denied the motion without a hearing, and we all assumed that we were having a hearing on the guardianship petition. And that was favorable to you when the judge said, okay, I'll give you standing without a hearing. It should have been, except then at the end, when you actually read his ruling, at some point he must have changed his mind or that's what we infer, I mean we don't really know, because then all he did was reread that part of the statute, which gets us back to what you're supposed to discover in standing. Once a non-parent gets past the standing issue, then what is the burden of proof for custody? For custody in a guardianship, it's only by a preponderance. You don't have to prove unfitness? Well, yes and no. I mean I know in your brief you cite 11-7. Yes, and there's been one law journal article on that, and it suggested that if you are a non-parent, you really have two hurdles. You have to survive the standing issue, and then you have to also focus on the fitness of the parent. And then unfortunately, of course, we have a statute that doesn't tell us what that is. Then there are also other older cases. The Adoption Act defines unfitness at least in terms of the adult. But of course, and I know you know this, Judge, but that's a whole different standard. That is my clear and convincing. The other problem is that there's other cases out there that suggest that really when you're doing a guardianship case under the Probate Act, you're also supposed to consider the best interest of the child. And I felt like we were really foreclosed on this. The guardian ad litem was summarily kind of cut off from the judge. He announced that he had already made up his mind, and she had submitted a report, and the report is in the record, of course. It seems like, tell me if I'm kind of understanding here, it seems like the trial court went past standing. But then used the standing burden of proof or standard, whatever you want to call it, in determining the guardianship. Exactly. Is that what it seems like? That's exactly right. Now, how did it hurt you, though, that you won the standing without a hearing? Well, I'm obviously trying to use it as a sword here. But the way I think it hurt us is because I don't think the trial court when he finally made his decision that he's giving us standing, fine. But then he didn't focus on the right factors when he reached that determination because he wasn't looking at standing. At least that's what he told us. We were doing regular guardianship. And yet, at the same time, he didn't really look at best interest factors either. So I think everyone really suffered under that particular ruling. I was just trying to determine if the proper standard had been used, was it a higher standard than the judge referred to? If you had to prove unfitness. I don't think it's necessarily a higher standard because I think that ultimately it's still by a preponderance of the evidence, at least that seems to be what limited case law we have would say. But, again, there's very little on this, as I'm sure you know. And, of course, my other argument is simply that assuming that the judge gave Victor standing, then the other problem is, okay, well, it would seem that his final decision is against the manifest weight of the evidence because he got into this focus on he could only consider that the evidence presented mostly acts of omission and not acts of commission. And I believe that I kind of borrowed because, again, there's not much case law from juvenile law, but definitely under the juvenile code there are many, many cases that exclusively focus on acts of omission. And, in fact, in the statute it says acts of commission or acts of omission, but he seemed to discount that. You didn't really raise it, but let me ask this anyway. How rebuttable a presumption in favor of the natural parent do you think the trial court engaged in? When I read the order, it seemed like he was implying that there was a much higher standard to rebut that presumption. It was almost an absolute presumption, but the statement in the statute indicates it is a rebuttable presumption. Are you asking me what I think the standard of proof is to rebut the presumption? It's clearly by a preponderance of the evidence. And I do think he did mention that in his ruling. He did? I think he did. You're not asking for a new trial on guardianship, or at least you have not affirmatively asked for that. You've asked for a hearing on standing, which I guess then would presume that there would be a trial if you won the standing. Right. In a hearing. Okay. I mean, because the relief you requested is a hearing on standing, and the other is that we just grant the guardianship petition based on the evidence Okay. Thank you, Counsel. Counsel? May it please the Court, Counsel? My name is Sandy Gordon, and I am the representative for the respondent of Hallie Jennifer Greer, who is the mother of Alex, the minor child, in this matter. The GAO found in her report that this child was healthy and well-adjusted. Public policy strongly favors the fundamental right of a parent to raise their child. By affirming the trial court decision, this court will be upholding that important public policy by keeping Alex together with her mother Jennifer. The GAO also suggested that Victor get the child and adopted the arguments of the appellant. Is that correct? That is correct, Your Honor. However, the allegations that were lodged by Victor were investigated before, not merely just by the GAO. His allegations were investigated by two trial courts. First, when he filed a petition for a plenary order of protection on these same allegations, and after hearing, was denied. Next, that same trial court asked DCFS to take possession of Alex and investigate these same allegations. And after investigation, DCFS returned the child to her mother Jennifer. Also, the state's attorney's office was asked to investigate these same allegations and found no need to proceed. Again here, the trial court, after two days of evidentiary hearing, determined that Alex belonged with her mother. The counsel claims that they did not get an evidentiary hearing on the issue of standing. That objection should have been made at lower court, and because it was not, it was waived. At no time, during the entire two days of trial, was Victor's counsel a proponent of the objection for lack of evidentiary hearing on standing. I think it's confusing what happened in the trial court. I think that's the problem. Because it seems like the trial court said, Okay, we're not going to have a hearing on standing. You've got standing. Now let's go to trial. And then at the end of the trial, he said, You lose because you didn't prove what you got approved for standing. Correct. And instead of using a standard, you know, you failed to prove you're entitled to a guardianship or whatever. I mean, the language that was used was the standing language. Do I have that right? Yes, Your Honor. So what about that? I mean, were you in trial? I was not the trial counsel. Well, was your client in trial? Was there a trial on the guardianship? Or was Judge Grace actually having a hearing on standing? Or is there anything in the record that would indicate that after hearing the evidence, he changed his mind on the issue of standing and said, Now that I've heard it all, you clearly don't have standing. I mean, is there anything? Your Honor, an evidentiary hearing took place, whereby Victor presented every witness he had, every witness he came to court with that day, knowing that he would have to prove standing. And there were no limitations on the evidence presented. There was no exhibit barred. There was no testimony excluded. There was no witness forbidden. There was no time limits. Well, when you say knowing that he had to prove standing, weren't you already past that when the judge denied the motion to dismiss? That's what it would appear on the record. But when you were there and saw from the record what testimony was elicited, what was sought, Victor presented his entire case. He didn't narrow the focus just to Willing or Able. He threw everything he had at this to prove that Jennifer was a bad mother. He addressed fitness. He addressed willingness. He addressed ability. He addressed her attention to health, welfare, safety, every aspect, things before the child was even born. The court had every opportunity to assess from that the minimal standard of Willing and Able. So is that what the court was saying then? The court was saying, okay, now I've heard everything, and you don't even get past first base? Yes, Your Honor. Okay. Was there any indication possibly? I mean, I haven't had a chance to look at the record yet. But was there any indication prior to the hearing that this was a combined standing slash merits hearing, or was it just let's hear the case? At the beginning of the record, there was some confusion whether what was going to be taking place at that time. The judge thought that the motion to dismiss had already been heard at a prior hearing, but all agreed there that it had not been addressed and that it would be addressed there. But the notice that went out to the court was for all pending, which included a motion to vacate the interim order, a motion to dismiss based on lack of standing, and the pending petition for guardianship. Okay. So it is clear that the hearing that did take place was not limited in its focus in any way. Thirteen witnesses testified about the mothering abilities, the parenting abilities of Jennifer. It encompassed all aspects. There were no narrowly drawn questions or limited focus of the testimony. And not only was it Victor's counsel questioning these 13 witnesses, it was also Jennifer's counsel. It was also the GAL.  the witnesses. Most importantly, though, when counsel claims that they didn't get a hearing, an evidentiary hearing on standing issues, they failed to allege any kind of prejudice. They claim there's prejudice, but they failed to show any fact that wasn't elicited that could make the difference in whether she was willing or unable to make day-to-day child care decisions. Let me ask you about the argument that's made by your opposing counsel that the trial court erred in looking only at acts of commission and not also acts of omission. What's your response to that? I think that the judge in his ruling, if you check the record at that page, was just basically summing up what he found. He was not saying that because he only found this and not that, that's his decision. He was saying, this is all I found and my decision is based on it. He very thoroughly went through each witness's testimony and his assessment of whether it was given credibility. It was a very well thought out decision. After hearing all the witnesses and seeing all the exhibits and assessing the credibility, he found that he defined some omissions, but he couldn't even find commissions in this regard. He wasn't saying that's the reason for his decision. He was just saying what he could find from the evidence. And among the things he found, he clearly stated, was that all the evidence shows is that there's nothing but a well adjusted, healthy three-year-old child. The question whether the trial court's decision was against the manifest weight of the evidence is governed by the rule that taking all the evidence in the light most favorable to Jennifer, whether the opposite conclusion is the only one that can be logically drawn. Here, that is clearly not the case. After the judge hearing 13 witnesses, the majority by far of which were his witnesses, the court assessed the credibility of those witnesses and the weight the evidence should be given. And it is the trial court that's in the best position to assess credibility and weight of evidence. It shouldn't be the role of this trial court to second guess that. The trial court's decision finding that he could not even show the minimum that Jennifer was not willing or able to make and carry out the day-to-day child care decisions for Alex is absolutely consistent with the evidence that was presented at the trial, with the other trial court finding that the plenary order of protection should be denied, that the DCFS returning the child to Jennifer's care, finding she was the appropriate party for having custody of that child. And the state's attorney, with these same allegations, finding that there's no need to act, there's no need to intervene, this child is not in peril. And the court's decision is consistent totally with public policy. Public policy strongly favors the fundamental right of a parent to raise their child without undue interference by third persons. All the same allegations were lodged and all the same conclusions were drawn. This child is not in peril and she belongs with her mother, Jennifer Greer. The decision of the trial court should therefore be affirmed. Thank you very much. Thank you, counsel. Counsel? Just a few more words. I want to make it clear that Judge Grace did not thoroughly assess the credibility of each witness. In fact, one of the statements he made in his ruling was, I am not going to go through what each witness said and talk about their credibility. He did make several comments about Jennifer's credibility, and he did, I think even before he ruled, state basically that he was going to ignore anything that her father, Philip Greer, said, because he found that he was so incredibly biased against her. But other than that, he made no assessments of the witness's credibility. The evidence that was presented by the mother consisted of merely stating that, yes, she was willing and able. Even Judge Grace found that her plans were more dreamlike in nature than reality. He questioned her ability to return to school in these times where she admitted that she owed SIU money, and SIU, as we all know, is under great fiscal restraint right now. She had very vague plans about where she was going to live. She stated that she had found rental houses, but she also said she didn't need money. I mean, her plans for the future as to how she would take care of her child were extremely flimsy, and obviously they didn't convince the trial court. The healthy and well-adjusted 3-year-old, Judge Grace, gave Victor Eck great credit for producing that child. You know, Eugenia's observation of the 3-year-old was brief and limited because we all had to work under this very expedited schedule. And at the time, the brief time that she spent with that child, the child looks healthy. But, again, you've seen these children that come before the juvenile court. They're moved from place to place to place. Let's look at that child again when she's 7 and see what has happened to her. It was not the same trial court. It was a different judge, Judge Salterson, that asked for the investigation. And, of course, we don't know why the state's attorney did not want to proceed, and we won't know. The only other thing I would call your attention to, and I have never seen a more elegant brief, but I think the guardian ad litem's brief squarely addresses the issue of public policy. And it's only a few pages long, but it does do an exquisite job of addressing that issue, and I'm sure you will look at that again. And I don't even want to attempt to redo what Eugenia did so well here. Thank you. Thank you, counsel. We appreciate the briefs and arguments of both counsel. We'll take the case under advice.